**SHAFFY MOEEL**
California State Bar No. 238732
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
e-mail: shaffy_moeel@fd.org

Attorneys for Mr. Nieto-Resendiz

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 07CR3347-JTM |
| ) | |
| Plaintiff, ) | DATE: May 5, 2008 |
| ) | TIME: 9:00 a.m. |
| v. ) | |
| ) | STATEMENT OF FACTS AND |
| **JOSE RUBEN NIETO-RESENDIZ,** ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| Defendant. ) | DEFENDANT'S MOTIONS *IN LIMINE* |
| ) | |

**I.**

**STATEMENT OF FACTS**

Mr. Nieto-Resendiz is charged with deported alien found in the United States in violation of Title 8, United States Code § 1326. Mr. Nieto-Resendiz hereby incorporates the statement of facts from the memorandum of points and authorities in support of his previous motions.

**II.**

**THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION DOCUMENTS AT TRIAL**

**A.    The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, *Not* Alienage**

Mr. Nieto-Resendiz expects that the government will seek to introduce a warrant of deportation and

07CR3347-JTM

an order of deportation to establish the fact of his deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Nieto-Resendiz's alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Nieto-Resendiz to be an alien after an administrative hearing, and that Mr. Nieto-Resendiz may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[1]

---

[1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr. Nieto-Resendiz's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

1    Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of
2 Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because
3 their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation
4 and warrant of deportation make reference to an "alien;" even more troubling, in the context of these
5 documents, the term "alien" is associated *with* Mr. Nieto-Resendiz, who presumably is the "alien" to which
6 the documents refer. In the face of these quasi-official government documents proclaiming Mr. Nieto-
7 Resendiz to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8
8 U.S.C. § 1326 as an open question that the government must prove beyond a reasonable doubt.

9    Should the Court nonetheless admit these documents, Mr. Nieto-Resendiz requests that this Court
10 instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of
11 deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and
12 that these documents do not, in and of themselves, establish the fact of alienage. Mr. Nieto-Resendiz further
13 requests that this Court redact these documents to exclude any reference to his alleged alienage.

14 **B.    None of the Other A-File Documents Are Admissible Under Any Rule of Evidence.**

15    Mr. Nieto-Resendiz anticipates that the government may seek to admit other documents from the
16 A-file, including the order to show cause why a person should not be deported and warnings regarding the
17 possible penalties for reentry. None of these documents from the A-file are admissible to establish any
18 matter at issue in this trial. All documents from the A-file—except the warrant of deportation and the order
19 of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial
20 than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible
21 hearsay under Federal Rule of Evidence 803(8).

22    1.    The Notice to Appear Is Inadmissible.

23    The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The
24 Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not
25 record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides
26 an objective observation that a person committed a crime. This document is nothing more than an
27 *accusation* that the government must prove in an immigration proceeding.
28 //

   2. <u>The Warnings of Possible Penalties Is Inadmissible.</u>

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant. It is also more prejudicial than probative. Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry; needless to say, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial. Accordingly, the warnings of possible penalties also must be excluded at trial.

   3. <u>If this Court Finds That These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage; Thus, This Court Should Order the Documents Redacted and Provide the Jury With a Limiting Instruction</u>.

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Nieto-Resendiz's alienage. Accordingly, this Court should redact these documents to exclude all references to alienage as well as any other prejudicial information such as prior convictions. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C.** **<u>This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Nieto-Resendiz's Constitutional Rights.</u>**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Nieto-Resendiz's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments. Because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage in such a proceeding based upon otherwise inadmissible hearsay. <u>Cunanan v. INS</u>, 856 F.2d 1373, 1374 (9th Cir. 1988). Similarly, because a criminal defendant such as Mr. Nieto-Resendiz never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

Additionally, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-10 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove some other fact, it should redact these documents to exclude reference to Mr. Nieto-Resendiz's alienage and instruct the jury as to the documents' limited relevance.

**D.    The Certificate of Nonexistence of Record Is Inadmissible Because it Violates the Confrontation Clause of the U.S. Constitution and Allows the Government to Circumvent its Discovery Obligations.**

Mr. Nieto-Resendiz has not received notice that the government intends to introduce a Certificate of Nonexistence of Record (hereinafter "CNER"). Therefore, Mr. Nieto-Resendiz assumes that the

government will not attempt to use such a document. Nonetheless, this document is inadmissible because it violates the Confrontation Clause. U.S. Const. Amend VI; Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements of a witness who does not appear at trial and who the defendant did not have a prior opportunity to cross-examine violates the confrontation clause of the Sixth Amendment). But see United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005) (holding that CNER is non-testimonial). If the government changes its position on this issue, Mr. Nieto-Resendiz requests the opportunity to submit further briefing on this issue.

### III.

**THIS COURT SHOULD PROHIBIT ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b) AND 609 BECAUSE THE GOVERNMENT HAS FAILED TO PROVIDE ADEQUATE NOTICE OF OTHER CRIMES, WRONGS, OR ACTS**

**A.    Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Federal Rules of Evidence 404(b). Notice is a condition precedent to admission of other acts evidence. FED. R. EVID. 404(b), 1991 Advisory Committee Notes. Timely notice of such evidence is also critical so that Mr. Nieto-Resendiz may adequately prepare his defense. Mr. Nieto-Resendiz has not received any notice of 404(b) evidence. Because the government has failed to provide adequate notice of other crimes, wrongs, or acts allegedly committed by Mr. Nieto-Resendiz, this Court should exclude any evidence the government will seek to introduce under Rule 404(b).

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the government has failed to provide notice of 404(b) evidence, let alone articulate the precise evidential hypothesis by which this evidence will be admitted, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

//

B.   **Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused. The government should be precluded from introducing any evidence of Mr. Nieto-Resendiz's prior convictions, as they are irrelevant under Federal Rule of Evidence 401 and prejudicial under Federal Rule of Evidence 403. See FED. R. EVID. 609(b). Even if Mr. Nieto-Resendiz were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior offense. FED. R. EVID. 401, 403, 609.

To the extent that this Court rules that Mr. Nieto-Resendiz's prior convictions are admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Nieto-Resendiz was convicted. Such information would be more prejudicial than probative of Mr. Nieto-Resendiz's guilt of the charged offense.

## IV.

## THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Nieto-Resendiz right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## V.

## THIS COURT SHOULD PROHIBIT THE WITNESSES FROM REFERRING TO MR. NIETO-RESENDIZ AS "THE ALIEN"

To convict Mr. Nieto-Resendiz, the government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that must be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); FED. R. EVID. 704(a). It is also a finding that the jury must make; thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

1  The government likely will call several witnesses from the Department of Homeland Security
2  (DHS), specifically, the A-file custodian, border patrol agents, and detention enforcement officers. Because
3  the DHS has accused Mr. Nieto-Resendiz of being an alien, it is anticipated that these witnesses will refer
4  to Mr. Nieto-Resendiz as "the alien." If these witnesses testify that Mr. Nieto-Resendiz is an alien, it will
5  create confusion among the jurors regarding this Court's instructions on the law and what the government
6  has—or has not—proved, in violation of Federal Rule of Evidence 403. It will also subvert Mr. Nieto-
7  Resendiz's right to a jury finding of every essential element—a right guaranteed by the Fifth and Sixth
8  Amendments. Accordingly, this Court should preclude the witnesses from referring to Mr. Nieto-Resendiz
9  as "the alien."

**VI.**.

**THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

12  The Court should order production of grand jury transcripts if a witness who likely will testify at
13  the trial of Mr. Nieto-Resendiz also is likely to have testified before the grand jury. Dennis v. United States,
14  384 U.S. 855 (1966); FED. R. CRIM. R. 26.2(f)(3). The defense requests that the government make such
15  transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any
16  need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule
17  of Criminal Procedure 26.2(d).

**VII.**

**THIS COURT SHOULD PRECLUDE EXPERT TESTIMONY**

A.  **All Expert Witnesses Offered Without Requisite Notice to Defendant Violate Federal Rule of Criminal Procedure 16(a)(1)(E) and must Be Excluded.**

22  Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the
23  government shall disclose to the defendant a written summary of testimony that the government intends to
24  use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The
25  summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons
26  for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing,
27  continuing prior to and during trial. FED. R. CRIM. P. 16(c). When a party fails to comply with the
28  discovery rules set forth in Rule 16, exclusion is a proper remedy. FED. R. CRIM. P. 16(d)(2). See also

1  Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in
2  1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the
3  government intends to call during the trial" (emphasis provided.).  Mr. Nieto-Resendiz previously filed a
4  Motion to Compel Discovery/Preserve Evidence, which requested that the government disclose its expert
5  witnesses per Rule 16.  Thus far, the government has only given notice of its intent to use a fingerprint
6  expert.  The government has not given any expert notice as to any other expert.  Mr. Nieto-Resendiz
7  respectfully requests that this Court grant this motion *in limine* to give effect to the discovery requirements
8  of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

### B. To the Extent this Court Permits the Government to Introduce Expert Testimony, a *Daubert* Hearing is Required.

If this Court determines that the government may introduce expert testimony, Mr. Nieto-Resendiz is entitled to a hearing to determine the expert's qualifications and the relevancy of the expert's proposed testimony.  See FED. R. EVID. 702, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Mr. Nieto-Resendiz specifically requests such a hearing should the government introduce testimony regarding fingerprint analysis—for example, testimony regarding the relationship between fingerprints taken from Mr. Nieto-Resendiz and those allegedly found on documents in Mr. Nieto-Resendiz's A-file.

"Faced with a proffer of expert scientific testimony, . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue . . . ."  Id. at 592-93.  Mr. Nieto-Resendiz requests that the Court make this determination after a pre-trial hearing held outside the presence of the jury, during which Mr. Nieto-Resendiz can test the proffered testimony's foundation and relevance.

## VIII.

### THIS COURT SHOULD ALLOW MR. NIETO-RESENDIZ LEAVE TO FILE FURTHER MOTIONS

Mr. Nieto-Resendiz requests leave to file further motions as may be necessary.

//

## IX.

## **CONCLUSION**

For the foregoing reasons, and for such other reasons as may appear at the hearing on these motions, Mr. Nieto-Resendiz respectfully requests that the Court grant his motions, and accord such other relief as this Court deems just.

Respectfully submitted,

Dated: April 28, 2008

 */S/ Shaffy Moeel*
**SHAFFY MOEEL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Nieto-Resendiz
Shaffy_Moeel@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy Chambers

Copy Assistant U.S. Attorney, via ECF email

Copy Defendant

Dated: April 8, 2008                     /s/ SHAFFY MOEEL
                                         Federal Defenders of San Diego, Inc.
                                         225 Broadway, Suite 900
                                         San Diego, CA 92101-5030
                                         (619) 234-8467  (tel)
                                         (619) 687-2666  (fax)
                                         Shaffy_Moeel@fd.org (email)